## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ZACHARY VERGARA, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NINTENDO OF AMERICA INC., a Washington corporation,<br><br>　　　　　　Defendant. | No. _____<br><br>Honorable _____ |

## DEFENDANT NINTENDO OF AMERICA INC.'S NOTICE OF REMOVAL

## I.　　　THE STATE COURT ACTION

On August 16, 2019, Plaintiff Zachary Vergara, on behalf of himself and similarly situated individuals, commenced this action in the Circuit Court for Cook County, Illinois. Mr. Vergara served Nintendo of America Inc.'s ("Nintendo") registered agent with the Summons and Complaint on or about August 27, 2019. *See* Declaration of Kristopher Kiel in Support of Nintendo Notice of Removal ("Kiel Decl.") ¶ 3.

Mr. Vergara asserts four causes of action against Nintendo related to Nintendo's Switch video-game console and accompanying Joy-Con controllers: (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; (2) breach of express warranty; (3) breach of implied warranty; and (4) unjust enrichment. Compl. ¶¶ 41–69. He alleges that the Joy-Con controllers experience "drift," which allegedly affects consumers' "gameplay" on the Switch. *See id.* ¶ 16. He also alleges that the Switch console, which includes "two of the Controllers," costs "approximately $327.00," and that the controllers "can also be purchased separately for approximately $75.99 for the pair, or $49.99 individually." *Id.* ¶ 22. Finally, Mr. Vergara alleges that "Switch owners have suffered damages for loss of use of their

Switch [consoles] and Controllers, loss of property value, and loss of time and expense trying to fix the problem themselves or by contacting [Nintendo] for support." *Id.* ¶ 23.

As to Mr. Vergara specifically, he alleges that he purchased a Switch console in November 2017, *id.* ¶ 24, and paid $19.99 to purchase a "replacement controller from a third-party," *id.* ¶ 26, and $14.99 to "have his Controllers disassembled and so that two replacement directional analog joysticks could be installed," *id.* ¶ 28.

Mr. Vergara brings this action as a putative class action, seeking to represent a nationwide class of "[a]ll persons in the United States who, within the applicable statute of limitations, purchased Defendant's Nintendo Switch or Controllers in the United States" and a subclass of all such persons in the United States who "purchased Defendant's Nintendo Switch or Controllers in Illinois." *Id.* ¶ 35. He alleges that "there are thousands, if not millions, of members of" the proposed class and subclass "such that joinder of all members is impracticable." *Id.* ¶ 39.

On behalf of himself, the putative nationwide class, and the putative Illinois subclass, Mr. Vergara seeks several forms of relief: actual or compensatory damages, injunctive relief, attorney fees and costs, disgorgement of any "unjustly retained" funds, and any other relief a court determines is necessary. *Id.* at 12, 14–16.

## II.    GROUNDS FOR REMOVAL

**A.    This Action is Removable Under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d) and 1453**

"[A]ny civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . ." 28 U.S.C. § 1441(a). This action is removable under Section 1441 because this Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d); *see also* 28 U.S.C. § 1453(b) (setting procedure for removing class actions).

CAFA gives federal courts original jurisdiction over putative class actions in which (1) the aggregate number of members in the proposed class is 100 or more; (2) the amount in

controversy "exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (3) the parties are minimally diverse—that is, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see also Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (setting forth the requirements for CAFA jurisdiction). For the following reasons, and as shown by the accompanying declaration of Kristopher Kiel, this action satisfies CAFA's requirements and is removable to this Court. *See* Kiel Decl.

> **1.      This Action Is a Putative Class Action With At Least 100 Members**

This action is a putative class action within the meaning of CAFA. CAFA defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Mr. Vergara filed this action under Section 2-801 of the Illinois Code of Civil Procedure, which allows "for the maintenance of a class action" when the "class is so numerous that joinder of all members is impracticable"; "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members"; "[t]he representative parties will fairly and adequately protect the interest of the class"; and "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(1)–(4); *see* State-Court Mot. for Class Cert., No. 2019-CH-09511 (Ill. Cir. Ct. Aug. 16, 2019). The requirements of class certification under 735 ILCS 5/2-801 parallel those of Federal Rule of Civil Procedure 23. *Compare* 735 ILCS 5/2-801, *with* Fed. R. Civ. P. 23.

In addition, Mr. Vergara's putative class and subclass contain over 100 members, as Mr. Vergara's own Complaint asserts. Compl. ¶ 39 (alleging that "there are thousands, if not millions, of members of" the proposed class and subclass).

> **2.      The Amount in Controversy Exceeds $5 Million**

CAFA permits courts to aggregate the claims of the individual class members "to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive

of interest and costs." 28 U.S.C. § 1332(d)(6). The amount in controversy "concerns what the plaintiff is claiming . . . , *not* whether plaintiff is likely to win or be awarded everything he seeks." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis added).

Here, the relief Mr. Vergara requests on behalf of himself and the proposed nationwide class and Illinois subclass demonstrates that more than $5 million is at issue. Indeed, Mr. Vergara's request for compensatory damages alone places more than $5 million in controversy. For the "thousands, if not millions," of members of the proposed class and subclass, Compl. ¶ 39, Mr. Vergara seeks damages to remedy alleged loss of use of their Switch consoles and Joy-Con controllers, the loss of "property value," and loss of time and expense, *id.* ¶ 23. Nintendo has sold over 14.7 million Switch units in the Americas since the gaming system launched in March 2017. Kiel Decl. ¶ 4. Nintendo also sells individual Joy-Con controllers and dual sets of Joy-Con controllers. *Id.* Alleged damages for fewer than one percent of Switch purchasers—based on the cost of just one pair of Joy-Con controllers ($75.99, according to Mr. Vergara's Complaint)—surpasses CAFA's $5 million threshold. *See* Compl. ¶ 22; *see also* Kiel Decl. ¶ 5. In addition, based on the alleged purchase price for the Nintendo Switch console and Joy-Con controllers, a minimal disgorgement of funds would independently satisfy the threshold. *See* Compl. ¶ 22; *see also* Kiel Decl. ¶ 5. And, of course, those two forms of relief together also exceed the amount in controversy necessary for Nintendo to remove to federal court.

Mr. Vergara's remaining requests for relief substantially increase the amount he has placed in controversy. On top of actual damages and disgorgement, he requests injunctive relief, attorney fees, and "[s]uch further and other relief the Court deems reasonable and just." Compl. at 12, 14–16. Mr. Vergara has already incurred attorney fees in filing the Complaint and state-court motion for class certification, and Nintendo would incur costs for complying with any injunction order to prohibit any of the alleged "unfair and deceptive advertising practices." Compl. at 12, 14–16. In addition, Mr. Vergara's request for "further and other relief," Compl. at 12, 14–16, leaves open the possibility that he seeks to recover punitive damages under the

Illinois Consumer Fraud and Deceptive Business Practices Act, Compl. at 12, 14–16. Those potential damages, although uncertain, also count toward the threshold. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (accounting for punitive damages "although the complaint was silent about punitive damages [because] the [Illinois Consumer Fraud and Deceptive Business Practices Act] permits recovery of punitive damages"); *Schwartz v. Campbell Soup. Co.*, 2019 WL 126188, at *2 (S.D. Ill. Jan. 8, 2019) ("Here, Plaintiffs' complaint does not expressly seek punitive damages, but their prayer for relief includes 'all such other and further relief, as may be just and proper.' Thus, it is still appropriate for the Court to consider potential punitive damages as part of the amount in controversy analysis."); *see also* 815 ILCS 505/10a.

It is apparent from Mr. Vergara's complaint that the amount in controversy here exceeds $5 million, satisfying that CAFA requirement.

### 3. The Parties Are Minimally Diverse

The parties are also minimally diverse, as CAFA requires, because "any member of [the class] of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Mr. Vergara is a citizen of Illinois. Compl. ¶ 10. Nintendo is a citizen of Washington State, which is both Nintendo's place of incorporation and its principal place of business. Kiel Decl. ¶ 2. Mr. Vergara himself alleges as much in his complaint. Compl. ¶ 11 (alleging that Nintendo "is a Washington corporation with its principal place of business located in Redmond, WA"). Thus, the minimal diversity requirement is met, as at least one putative class member—Mr. Vergara—is diverse from Nintendo.

Because Mr. Vergara's action is a putative class action involving more than 100 alleged class members, claiming more than $5 million in relief in the aggregate, and involving minimal diversity between Mr. Vergara and Nintendo, the action is removable under CAFA.

### B. Related Actions Have Been Filed in Federal Court under CAFA

Two related putative class actions have been filed against Nintendo in federal court under CAFA. In *Diaz v. Nintendo of America, Inc.*, No. 2:19-cv-01116-TSZ (W.D. Wash. July 19,

2019), Plaintiff Ryan Diaz filed an action on behalf of himself and "similarly situated individuals who purchased Nintendo Switch game systems ('Switch') and extra Joy-Con controllers." Diaz Compl. ¶ 1. He asserts state and federal warranty and consumer-protection causes of action alleging that the controllers "that are part of the Switch contain a defect that can result in the joystick moving or activating on its own ('drifting') and manipulating game play without manual operation by the user." *Id.* ¶ 1. Diaz seeks to represent a nationwide class of "[a]ll persons in the United States who bought a Nintendo Switch or Joy-Con controllers" or, "[i]n the alternative," a subclass of "[a]ll persons in the state of California who bought a Nintendo Switch or Joy-Con controllers." *Id.* ¶ 38.

Diaz asserts that the federal court has jurisdiction under CAFA because "(1) there are 100 or more class members (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states." *Id.* ¶ 6.

In *Carusone v. Nintendo of America, Inc.* No. 5:19-cv-01183-HNJ (N.D. Ala. July 24, 2019), Plaintiff Gillian Carusone filed an action on behalf of herself and "similarly situated individuals who purchased Nintendo Switch ('Switch') game systems and extra Joy-Con controllers." Carusone Compl. ¶ 1. She likewise asserts state and federal warranty and consumer-protection causes of action alleging that the controllers "that are part of the Switch contain a defect that can result in the joystick moving or activating on its own ('drifting') and manipulating game play without manual operation by the user." *Id.* Carusone seeks to represent solely a statewide class of "[a]ll residents of the state of Alabama who purchased a Nintendo Switch console or Joy-Con controllers." *Id.* ¶ 37.

Even though Carusone seeks to represent a smaller statewide class than at issue here and in *Diaz*, she still asserts that the federal court has jurisdiction under CAFA because "i) there are 100 or more class members, ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and iii) there is minimal diversity because at least one Plaintiff and one Defendant are citizens of different states." *Id.* ¶ 6.

145693371                                                    -6-

**C.      None of CAFA's Exceptions Bar Removal of this Case**

Moreover, this action does not fall within the exclusions to removal jurisdiction under CAFA. Section 1332(d)(4) requires a federal court to decline jurisdiction over a class action when, among other things, "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," and at least one defendant whose "alleged conduct forms a significant basis for the claims asserted by the proposed class . . . is a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A); *see also* 28 U.S.C. § 1332(d)(4)(B) (similarly excluding cases where "two thirds or more of" the class members and "the primary defendants, are citizens of the State in which the action was originally filed"). Section 1332(d)(4) does not apply here because Nintendo is not a citizen of Illinois, where the action was originally filed.

Sections 1332(d)(9) and 1453(d) exempt certain securities and corporate-governance cases from CAFA's broad jurisdictional grant. *See* 28 U.S.C. § 1332(d)(9) (explaining that § 1332(d)(2) does not apply to cases arising under several sections of the Securities Act of 1933, several sections of the Securities Exchange Act of 1934, and certain state corporate governance laws); *id.* § 1453(d) (same). Those provisions do not bar jurisdiction here because Plaintiff's claims do not arise under the Securities Act of 1933 or the Securities Exchange Act of 1934 nor do they involve state-centric corporate governance issues.

**D.      Venue and Intra-District Assignment Are Proper**

The Northern District of Illinois, Eastern Division is the proper venue and intra-district assignment for this action upon removal because this "district and division embrace" the Circuit Court of Cook County, Illinois, where the Complaint was filed and is currently pending. *See* 28 U.S.C. § 1441(a).

**E.      Nintendo Has Satisfied All Other Required Removal Procedures**

Nintendo has satisfied all other procedural requirements under the applicable statutory provisions. Nintendo has timely filed this Notice of Removal. Nintendo was served with a copy of the Complaint and Summons on August 27, 2019. Kiel Decl. ¶ 3. Nintendo filed and served

this Notice of Removal within 30 days of service of the Complaint in compliance with 28 U.S.C. § 1446(b).

Further, and as required by 28 U.S.C. § 1446(a), Nintendo has filed with this Notice of Removal true and correct copies of all process, pleadings, and orders served upon Nintendo in the state-court action. Copies of the Complaint, Summons, and state-court Motion for Class Certification and Notice of Motion for Class Certification are attached hereto as Exhibits 1–4. As of the date of filing this Notice, no other filings have been made in this matter in the Circuit Court of Cook County. A true and correct copy of the state court's docket is attached hereto as Exhibit 5.

Finally, Nintendo will promptly serve on Mr. Vergara and file with the Circuit Court a "Notice to Adverse Party of Removal to Federal Court" and will also file with this Court a "Certificate of Service of Notice to Adverse Party of Removal to Federal Court." 28 U.S.C. § 1446(d); Fed. R. Civ. P. 5(d).

## III.    RESERVATION OF RIGHTS AND DEFENSES

Nintendo reserves all of its defenses and rights, and nothing in this Notice of Removal or attached hereto in any way concedes the truth of any of Mr. Vergara's allegations or waives any of Nintendo's defenses, including Nintendo's right to arbitrate this matter on an individual basis.[1] Nintendo also reserves its right to amend or supplement this Notice of Removal.

## IV.    CONCLUSION

Nintendo requests that this Court consider this Notice of Removal as provided by law governing the removal of cases to this Court; that this Court take such steps as are necessary to achieve the removal of this matter to this Court from the Circuit Court of Cook County, Illinois; and that this Court make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the state court action.

---

[1] By accepting Nintendo's End User License Agreement, Mr. Vergara agreed to mandatory arbitration on an individual basis. Kiel Decl. ¶ 6. Nintendo intends to move to compel arbitration.

Dated: September 25, 2019                      Nintendo of America Inc.


By:  s/ Kathleen A. Stetsko                
      One of Its Attorneys

Christopher B. Wilson
Kathleen A. Stetsko
**PERKINS COIE LLP**
131 S Dearborn Street # 1700
Telephone: 312.324.8400
Fax: 312.324.9400
Email: CWilson@perkinscoie.com
Email: KStetsko@perkinscoie.com

David J. Burman (*pro hac vice* forthcoming)
Eric J. Weiss (*pro hac vice* forthcoming)
Mallory Gitt Webster
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: DBurman@perkinscoie.com
Email: EWeiss@perkinscoie.com
Email: MWebster@perkinscoie.com

## <u>CERTIFICATE OF SERVICE</u>

On this date I caused to be served on each of the attorneys identified below, via the delivery methods indicated below, a copy of the foregoing document:

<table>
<tr>
<td>Eugene Y. Turin<br><b>MCGUIRE LAW, P.C.</b><br>55 W. Wacker Drive, 9th Floor<br>Chicago, IL 60601<br>Telephone: 312.893.7002<br>Fax: 312.275.7895<br>Email: eturin@mcgpc.com</td>
<td><u> X </u>  Via the Clerk's eFiling Application<br>___  Via U.S. Mail, 1st Class<br>___  Via Overnight Delivery<br>___  Via Facsimile<br><u> X </u>  Via Email<br>___  Other: _____</td>
</tr>
</table>

*Attorney for Zachary Vergara*

Dated: September 25, 2019                         By: <u>s/ Mallory Gitt Webster</u>