**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY VERGARA, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 19-cv-06374 |
| v. | ) ) | Hon. Gary S. Feinerman |
| NINTENDO OF AMERICA INC., a Delaware Limited Liability Company, | ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| *Defendant*. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS**

**I.  INTRODUCTION**

Plaintiff Zachary Vergara ("Plaintiff") brought this suit against Nintendo of America Inc. ("Nintendo" or "Defendant") alleging basic state-law claims for Defendant's manufacturing and sale of their defective Nintendo Switch gaming console. (*See* Complaint, Dkt. 1-2.) Instead of litigating this case on the merits and addressing how it permitted a product with a defect that renders it unusable to be sold to thousands of consumers, Defendant has quickly attempted to avoid any public court proceedings by seeking to compel private and individual arbitration of Plaintiff's claims. However, while Defendant accuses Plaintiff of "ignor[ing] his agreement" with Nintendo to arbitrate his claims by filing this suit (Motion to Compel ("MTC"), Dkt. 17, at 1), it is ironically Nintendo, in its haste to avoid litigation, that has ignored the very agreement it seeks to enforce. While Defendant's Motion to Compel seems to present a cogent argument that on its face appears identical to hundreds of other arbitration motions filed yearly across the country, Defendant entirely fails to address the fact that its "End-User License Agreement" ("EULA") *specifically*

1

*carves out from its arbitration provision the very claims that Plaintiff* brings here. Because Plaintiff's claims are basic state-law claims "that may be brought in small-claims court," by Defendant's own EULA agreement and language, and as found by other courts, the arbitration provision – *including* the class action waiver – is entirely inapplicable. (EULA, Dkt. 18, at § 7(C)). As such, Defendant's Motion to Compel should be denied in its entirety, and Plaintiff should be permitted to proceed with litigating the merits of his claims.

## II. BACKGROUND

This suit relates to Defendant's "Switch" game console that it released in March 2017. (Complaint at ¶ 14.) Defendant's Switch console consists of a portable screen that displays video games either on its built-in screen or on a television, and two wireless controllers that can be detached from the central unit and are used to play games on the console and otherwise control it. (*Id.* at ¶¶ 14–15.) Unbeknownst to Plaintiff and other consumers nationwide, however, Defendant's Switch game console had a defect in the joysticks built into the controllers that would cause the joysticks to falsely register user input, or "drift," on their own without the user actually moving them. (*Id.* at ¶¶ 16, 25, 27.) As a result, Plaintiff, like other consumers across the country, was unable to use his Nintendo Switch for its intended purpose and had to spend additional money to replace and repair his controllers. (*Id.* at ¶¶ 17–21, 26–28.)

Plaintiff originally filed this suit in August 2019 in the Circuit Court of Cook County. Defendant subsequently removed the case to this Court on September 25, 2019. (Dkt. 1.) Plaintiff's Complaint alleges state-law claims against Defendant for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, breach of express warranty, breach of implied warranty, and unjust enrichment. (*Id.* at ¶¶ 41–69.) Critically, Plaintiff's claims all essentially seek reimbursement for his purchase of Defendant's Switch game console and the

2

replacement parts and controller that he purchased—totaling approximately $361.98. (Complaint at ¶¶ 22, 26, 28, 51, 57, 65, 69.)

### III. LEGAL STANDARD

Whether an arbitration agreement is valid and should be applied is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985). Courts should generally "apply ordinary state-law principles that govern the formation of contracts" (*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) to determine whether the parties agreed to arbitration as the Federal Arbitration Act "places arbitration agreements on equal footing with other contracts[.]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). As the party seeking to compel arbitration, Defendant "bear[s] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence[.]" *Mohammed v. Uber Techs., Inc.*, No. 16-cv-2537, 2018 WL 1184733, at *5 (N.D. Ill. Mar. 7, 2018). Thus, "a district court considering . . . an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Regan*, 85 F.Supp.3d at 1360 (internal citations omitted).

### IV. ARGUMENT

While Defendant attempts to enforce the arbitration and class action waiver provision within its EULA (EULA at § 7(A)), Defendant entirely ignores the carve out provision within that very same agreement for any "Claims . . . that may be brought in small-claims court." (EULA at § 7(C)). Given that, as Defendant argues, Plaintiff "accept[ed] the EULA" (MTC at 2–3, 5), the Court must give as much credence and weight to the carve out provision as to the arbitration and

3

class action waiver provision Defendant seeks to enforce. The carve out language is explicit. While Section 7(A) includes the arbitration and class waiver language, Section 7(C) specifically states as follows:

> C. Section 7(A) does not apply to any Claim (i) in which a party is attempting to protect its intellectual property rights (such as its patent, copyright, trademark, trade secret, or moral rights, but not including its privacy or publicity rights), or (ii) that may be brought in small-claims court.

(EULA at § 7(C)). Thus, this is not a situation where the carve out language only tangentially refers to the arbitration or class waiver language in Section 7(A), nor is it unclear whether 7(C) was meant to apply as a carve out to the language in 7(A). Rather, Section 7(C) is a separate section that completely and explicitly excludes the arbitration and class waiver provisions *as a whole* for any claim that "may be brought in small-claims court." As such, if Section 7(C) applies to the claims at issue here – that is, if Plaintiff's claims could be brought in small-claims court – then Defendant's Motion to Compel must be denied in its entirety. *Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979, 991 (N.D. Ill. 2008) ("A party cannot be compelled to arbitrate a dispute that he has not agreed to arbitrate").

The explicit and complete carve out for any claim that may be brought in small-claims court constitutes language that distinguishes Defendant's arbitration clause from those clauses typically raised in motions to compel. The language in Defendant's arbitration clause constitutes a sharp distinction from most arbitration agreements challenged in federal court, which rather than excluding such claims altogether from the arbitration agreement as Defendant did here, instead permit that "the customer may take claims to small claims court if such claims qualify to be heard in that court." *See, e.g., Crandall v. AT & T Mobility, LLC*, No. 07-cv-750, 2008 WL 2796752, at *3 (S.D. Ill. July 18, 2008). Pursuant to the Illinois rules governing jurisdiction of small claims courts, "a small claim is a civil action based on either tort or contract for money not in excess of

4

$10,000, exclusive of interest and costs, or for the collection of taxes not in excess of that amount." Ill. Supp. Ct. Rule 281.[1]

Here, Plaintiff's claims are all common-law claims based in tort (*see* Count I and Count IV for misrepresentation under the Illinois Consumer Fraud and Deceptive Business Practices Act and unjust enrichment)[2] and contract (*see* Counts II and III for breach of express and implied warranty). Further, Plaintiff's claims all seek recovery of less than $10,000.00, as at most Plaintiff is entitled to a refund of his purchase price of the Nintendo Switch game console he purchased – $327.00 – and the replacement controller and parts that he purchased—$19.99. (Complaint at ¶¶ 22, 26, 28.) In short, there is no question that Plaintiff could have brought his claims against Defendant in Illinois small claims court. As such, pursuant to Section 7(C) of Defendant's own contract, the arbitration provision and class action waiver contained in Section 7(A) – including any issues regarding arbitrability – are simply inapplicable to Plaintiff's claims and cannot be enforced.

In *Horton v. Dow Jones & Company, Inc.*, No. 18-cv-4027, 2019 WL 952314 (S.D.N.Y. Feb. 27, 2019), the court recently came to that very conclusion in denying a motion to compel arbitration involving a "subscriber agreement" containing an almost identical carve out provision. In that case, the plaintiff filed a class action suit relating to violations of the Michigan "Video Rental Privacy Act." 2019 WL 952314, at *1. In responding, the defendant sought to enforce an

---

[1] Defendant does not challenge the application of Illinois law and even cites to Illinois appellate court rulings. (*See* MTC at 8–9) (citing *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122 (Ill. App. Ct. 2005) & *Hawkins v. Capital Fitness, Inc.*, 29 N.E.3d 442, 446 (Ill. App. Ct. 2015)).

[2] *See 2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 349 (Ill. Supp. Ct. 1990) (stating that "misrepresentation" was a "tort"); *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998) (stating that "unjust enrichment may be predicated . . . on a tort theory"); *see also Zimmerman v. Northfield Real Estate, Inc.*, 510 N.E.2d 409, 415 (Ill. App. Ct. 1986) (explaining that economic losses may be recovered "in a tort action where intentional misrepresentation is sufficiently alleged").

5

arbitration provision contained within a "subscriber agreement" that the plaintiff, similar to Plaintiff here, agreed to upon purchase of a subscription by clicking a check-box. *Horton*, 2019 WL 952314, at *1. As in Defendant's EULA, the defendant's subscription agreement in *Horton* contained a separate section with an arbitration provision that provided that "any controversy or claim arising out of or relating to this Agreement . . . will be resolved by arbitration." *Id.* However, just like Defendant's EULA, the defendant's arbitration provision also contained a carve out that specifically excluded "disputes that qualify for small claims court[.]" *Id.* The court found that this language "expressly exempt[ed]" the plaintiff's claims because "[u]nder New York law, Plaintiff's individual VRPA claim qualifies for small claims court because he does not seek damages in excess of $5,000, and Defendant maintains an office in New York." *Id.* at *3 (citing N.Y. Uniform Dist. Ct. Act § 1801 (McKinney 2011) ("a small claim includes any cause of action in which 'amount in dispute does not exceed five thousand dollars . . . provided that the defendant . . . has an office . . . within a district of the court in the county'")). As the court found in *Horton*, there is no question that Plaintiff's claims could be brought in small claims court such that they are "exempt" from the arbitration provision within Section 7(A).[3]

To the extent that Defendant argues that it's definition of "Claim" for purposes of the carve out in Section 7(C) somehow extends beyond the claims Plaintiff has brought in this litigation, such language should be interpreted in Plaintiff's favor. Specifically, Defendant's EULA defines "Claim" as "[a]ny matter we are unable to resolve and all disputes or claims arising out of or

---

[3] Nor is there any question that Section 7(C) also exempts Plaintiff's claims from the class action waiver in Section 7(A). Unlike in *Horton* where the carve out provision was incorporated into the arbitration and class action waiver provision itself, and thus the court found it worked to carve out small claims only from arbitration (*see* 2019 WL 952314, at *2), Defendant's carve out provision is contained separately in Section 7(C), which specifically and completely carves out from Section 7(A) all claims qualifying for small claims court—including both from arbitration *and* the class action waiver in Section 7(A).

relating to this Agreement, including its formation, enforceability, performance, or breach (each, a 'Claim')[.]" (EULA at § 7(A)). However, Defendant fails to define "matter," "dispute," or "claim." As such, "the doctrine of *contra proferentem* requires that ambiguities in the terms of a contract are construed against the drafter." *Lakeview Collection Inc. v. Bank of Am., N.A.*, 942 F. Supp. 2d 830, 849, n.8 (N.D. Ill. 2013) (internal citations omitted); *see also Teras Chartering, LLC v. Hyupjin Shipping Co.*, No. 16cv-0188, 2017 WL 3424960, at *5 (W.D. Wash. Aug. 9, 2017) ("In cases of doubt, an instrument is to be taken against the party that drew it") (collecting authorities).

  While Defendant could have specifically defined "Claim" to include "any *lawsuit* we are unable to resolve," or "any *legal* proceeding," such that Plaintiff's class action suit as a whole would have fallen with the definition of a "Claim" that could not be brought in small claims court, Defendant did not do so. Indeed, Defendant could also have included language in Section 7(C) stating that the class action waiver applies even if claims could have been brought in small claims court. But it chose not to include such language. Instead, Defendant, as in *Horton*, specifically focused on Plaintiff's "disputes" and "claims," which are the common-law claims that Plaintiff has brought against Defendant and which he could have just as easily filed in small claims court. While Defendant may not have anticipated the consequences of its decision to draft an unconventional arbitration agreement with a *separate* carve out provision, Defendant cannot ignore the very agreement that it reached with Plaintiff and enforce arbitration of claims it itself specifically exempted.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Dismiss should be denied in its entirety and Plaintiff should be allowed to proceed with litigating this case on the merits and in this Court.

Dated:  January 24, 2020                                    ZACHARY VERGARA, individually and
                                                            on behalf of a class of similarly situated
                                                            individuals

                                                            By:  /s/ Eugene Y. Turin
                                                                 One of Plaintiff's Attorneys

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL  60601
Tel: 312-893-7002
eturin@mcgpc.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I electronically filed the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Dismiss* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

By: */s/* Eugene Y. Turin