UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZACHARY VERGARA, individually and on behalf of a class of similarly situated individuals, <br><br>  Plaintiff, <br><br> vs. <br><br> NINTENDO OF AMERICA INC., <br><br>  Defendant. | 19 C 6374 <br><br> Judge Gary Feinerman |

**MEMORANDUM OPINION AND ORDER**

Zachary Vergara brought this putative class action in the Circuit Court of Cook County, Illinois, against Nintendo of America Inc., alleging various state law torts. Doc. 1-2 at 2-17. After removing the suit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), Doc. 1, Nintendo moved under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration, Doc. 16. After briefing closed on that motion, Vergara moved for leave to file an amended complaint. Doc. 34. Nintendo's motion to compel arbitration is granted, with the understanding that Vergara may pursue his claims in this court if the arbitrator finds that they are not arbitrable, and Vergara's motion for leave to amend is denied without prejudice as moot.

**Background**

On a motion to compel arbitration, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (internal quotation marks omitted).

On behalf of himself and a putative class, Vergara alleges that he bought Nintendo's "Switch" videogame console and that the "Joy-Con" controllers included with his purchase are defective. Doc. 1-2 at p. 1, ¶ 1. In conjunction with the purchase, Vergara and Nintendo entered

1

into an End-User License Agreement ("EULA"). Doc. 17 at 7-10, 13-16. Two provisions are pertinent here. Section 7(A) provides: "Any matter we are unable to resolve and all disputes or claims arising out of or relating to this Agreement, including its formation, enforceability, performance, or breach (each, a 'Claim'), with the exception of the matters described in section 7(C) below, shall be finally settled by binding arbitration administered by the American Arbitration Association [("AAA")] in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer-related disputes … ." Doc. 18 at 7. Section 7(C), in turn, provides in relevant part that "Section 7(A) does not apply to any Claim … that may be brought in small-claims court." *Id*. at 8.

## Discussion

Section 2 of the FAA states, in relevant part:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 "mandates enforcement of valid, written arbitration agreements," *Tinder*, 305 F.3d at 733, and "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). "[B]ecause arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Ibid*. (internal quotation marks omitted). "Under the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). "To give effect to the federal policy favoring private arbitration, the FAA provides for stays of

litigation when an issue presented in the case is referable to arbitration." *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 3).

Courts "evaluate agreements to arbitrate under the same standards as any other contract," *ibid.*, which include "all general principles of state law," *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013). *See Gore*, 666 F.3d at 1032 ("'[C]ourts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms.'") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). When "determin[ing] whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation," but "[o]nce it is clear … that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Ibid.* Accordingly, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ibid.* (internal quotation marks omitted). "[J]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder*, 305 F.3d at 735; *see also Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 671 (7th Cir. 2003) ("A trial to determine arbitrability is required … only if the issue that an evidentiary hearing would resolve is fairly contestable.").

Vergara does not dispute that Section 7(A) of the EULA is a valid, written arbitration provision. Vergara instead maintains that Section 7(A) does not extend to this suit because his claims fall within the Section 7(C) carve-out for claims that could have been brought in small

3

claims court. Doc. 24. Nintendo responds that it is up to the arbitrator, not the court, to interpret Sections 7(A) and 7(C) and to determine whether Vergara's claims must be arbitrated. Doc. 17 at 16-20; Doc. 25 at 7-9.

As a general rule, courts rather than arbitrators decide "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also BG Grp. PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) ("[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"); *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533, 536 (7th Cir. 2008) ("Whether a particular dispute must be arbitrated is generally a question for judicial determination … ."). An exception to the general rule applies where there is a "clear[] and unmistakabl[e]" agreement between the parties that the arbitrator will resolve disputes about arbitrability. *Howsam*, 537 U.S. at 83; *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Nintendo argues that the EULA's arbitration clause, by incorporating the AAA's Commercial Arbitration Rules, expressly delegates to the arbitrator the parties' disputes concerning the arbitrability of particular claims. Doc. 17 at 17-18. Vergara does not respond to the argument, thereby forfeiting the point. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations

omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted).

Nintendo is correct on the merits in any event. As noted, Section 7(A) of the EULA states that claims within its scope "shall be finally settled by binding arbitration administered by the [AAA] in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer-related disputes." Doc. 18 at 7. AAA Rule 7(a), in turn, expressly delegates to the arbitrator questions of arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity of the arbitration agreement or to *the arbitrability of any claim or counterclaim*." American Arbitration Association, *AAA Commercial Rule 7(a)*, http://www.adr.org/sites/default/files/CommercialRules_Web.pdf (last visited May 20, 2020) (emphasis added).

The Seventh Circuit has not decided whether an arbitration agreement's incorporation of the AAA Rules qualifies as a "clear and unmistakable" agreement to arbitrate arbitrability. The eight circuits to have directly addressed the question, though, all answered that question in the affirmative. *See Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11-12 (1st Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006), *abrogated on other grounds by Henry*

5

*Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 211 (2d Cir. 2005). This court agrees with the consensus. *See Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701-02 (N.D. Ill. 2016). Accordingly, by entering into an arbitration agreement that incorporates the AAA Rules, the parties delegated to the arbitrator the question whether Vergara's claims must be arbitrated.

Vergara correctly observes that a party cannot be required to arbitrate a dispute that he has not agreed to submit to arbitration. Doc. 24 at 3 (citing *AT&T Techs.*, 475 U.S. at 648). That principle, however, does not mandate that the court, rather than the arbitrator, decide whether his claims must be arbitrated. Vergara's observation elides the distinction between two separate questions: (1) whether the EULA's arbitration provision covers his claims; and (2) whether that arbitrability question must be decided by the court or the arbitrator. The answer to the second question is that the arbitrator decides—that is, Vergara agreed to arbitrate the scope of the arbitration provision—which means that it is up to the arbitrator to answer the first question. *See Local 744, Int'l Bhd. of Teamsters v. Hinckley & Schmitt, Inc.*, 76 F.3d 162, 165 (7th Cir. 1996) ("We do not mean to say that situations do not exist where it is proper for an arbitrator, and not a court, to decide whether a dispute is arbitrable. The Supreme Court has expressly recognized that parties may agree to 'arbitrate the arbitrability issue.'") (quoting *AT&T Techs.*, 475 U.S. at 648).

## Conclusion

Nintendo's motion to compel arbitration is granted. The parties must submit Vergara's claims to arbitration administered by the AAA. This suit is stayed pending resolution of the arbitration. If the arbitrator decides that Vergara's claims are not arbitrable, the court will reopen

these judicial proceedings on Vergara's motion. Because the amendments Vergara proposes to make to his complaint would not alter this result, his motion for leave to file an amended complaint is denied without prejudice as moot.

May 21, 2020

_____
United States District Judge